RECEIVED
IN ALEXANDRIA, LA.

MAR 2 6 2010

TONY R. MOORE  CLERK
BY_____
                DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| J & J SPORTS PRODUCTIONS INC. | : | DOCKET NO. 09-1754 |
|---|---|---|
| VS. | : | JUDGE TRIMBLE |
| FRANK T. PAPANIA JR. ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a "Motion for Default Judgment" (doc. #14) filed by Plaintiff, J & J Sports Productions, Inc., wherein the mover seeks an order granting a default judgment against defendant, Frank T. Papania, Jr., individually and d/b/a Outriggers Tavern, jointly and severally. Plaintiff seeks (1) up to $10,000.00 pursuant to 47 U.S.C. § 605(e)(3)C)(i)(II), (2) up to $100,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) for enhanced damages for Defendant's willful violation of 47 U.S.C. § 605(a), and (3) costs and attorney fees in the amount of $1,592.00 pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

## FACTUAL STATEMENT

Plaintiff, J&J Sports Productions, Inc. (the "company") owns the rights for the commercial distribution of the DeLAHoya/Pacquaio fight which was held on December 6, 2008. The company marketed the sub-licensing of the broadcast to commercial establishments. Prior to the fight being broadcast, the company hired Signal Auditing, Inc. to contract with independent auditors who were assigned to identify establishments that unlawfully exhibited the fight.

Defendant, Frank T. Papania, Jr. individually and d/b/a Outriggers Tavern did not purchase

the rights to exhibit the fight.  One of the auditors purposefully visited Outriggers Tavern on the night the fight was to be broadcast at approximately 8:20 p.m. until approximately 9:15 p.m. He observed that two television sets in the Tavern were exhibiting the fight to patrons of the Tavern. Plaintiff asserts that such a showing was not authorized by the company and that said showing was in violation of the Piracy Statutes of the Federal Communications Act, particularly, 47 U.S. C. § 605 and 47 U.S.C. § 553.

Plaintiff filed the instant Complaint on October 5, 2009 alleging that Defendants knowingly and wilfully violated the Communication Act of 1934, as amended, 47 U.S.C. § 553 and 605 *et seq.* The Complaint alleges that Defendants, unlawfully intercepted and exhibited the DelaHoya/Pacquaio program on December 6, 2008.

Copies of the Summons and Complaint were served on Defendants on October 28, 2009 and filed with the Court on December 17, 2009.[1]  Defendants failed to answer the lawsuit.  Accordingly, on January 12, 2010, Plaintiff filed a Request for Clerk's  Entry of Default,[2] and on that same date, the Clerk of Court  filed a Notice of Entry of Default.[3]

Plaintiff has filed a Motion for Default Judgment and in that motion, the company seeks damages pursuant to 47 U.S.C. § 605.

## LAW AND ANALYSIS

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus

---

[1]  Docs. # 8 and 9.

[2]  Doc. #11.

[3]  Doc. #12.

established.""[4] A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true.[5]  However a defendant's default does not in itself warrant the court in entering a default judgment; there must be a sufficient basis in the pleadings for the judgment entered.[6]

Prior to obtaining a default judgment, the party seeking judgment must first seek an entry of default.[7]  Plaintiff has satisfied this requirement.  Thereafter, Plaintiff is required to seek a default judgment from the Court.[8]  The Court, in its discretion, must determine that there is a "sufficient basis in the pleadings for the judgment to be entered."[9]  The Clerk's entry of default causes all well-pleaded allegations of facts to be deemed admitted.[10]  The Court must accept these facts as true and determine whether they state a claim upon which relief may be granted.[11]  In considering any default judgment, the court must examine (1) jurisdiction, (2)liability, and (3) damages.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

Plaintiff has alleged violations of 47 U.S.C. § § 553 and 605.  Plaintiff elects to proceed and

---

[4] *Ohio Central Railroad Company v. Central Trust Company of New York,* 133 U.S. 83, 10 S.Ct. 235 (1889).

[5] *Thomson v. Wooster,*114 U.S. 104, 5 S.Ct. 788 (1884).

[6] *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank,* 515 F.2d 1200 (C.A. Tex. 1975).

[7] Fed. R. Civ.P. 55(a).

[8] Fed. R.Civ.P. 55(b)(2).

[9] *Nishimatsu,* 515 F.2d at 1206.

[10] See *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987).

[11] *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1370, n. 41 (11th Cir. 1987).

3

receive damages under § 605. Plaintiff may only recover under one section.[12] In other words, § § 553 and 605 are not cummulative.[13] The statute provides, in pertinent part:

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, ... No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto ...[14]

As the exclusive licensee of closed-circuit distribution rights to the fight, Plaintiff can bring a right of action for either actual damages, including any profits of the violator that are attributable to the violation, or statutory damages "in a sum of not less than $1,000.00 or more than $10,000.00 for each violation of the statute.[15] The court may increase the damage award by an amount not to exceed $100,000.00 for each willful violation of the statute.[16]

Plaintiff argues that the Court should follow *Cablevision v. Sikes*,[17] wherein the Second

---

[12] *J & J Sports Prods. Inc. v. Fitzgerald*, 2009 WL 3681834 at n. 1(N.D. Ga. 2009).

[13] *Entertainment by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F.Supp.2d 769, 775 (S.D. Tex. 2002).

[14] 47 U.S.C. § 605(a).

[15] *See Id.*, § 605(d)(6) & (e)(3)(C)(i).

[16] *Id.* § 605(e)(3)(C)(ii).

[17] 75 F.3d 123 (2nd Cir. 1996).

Circuit held that § 605(a) regulates any transmission originating as a radio communication, regardless of whether the transmission is intercepted while it is a radio wave or while bing transmitted over a cable system.   The Second Circuit found that both § 605 and 553 cover the interception of cable programming transmitted over a cable network.   The Second Circuit relied on cited statements by Senator Robert Packwood concerning the legislation:

> In amending existing section 605, it is intended to leave undisturbed the case law that has developed confirming the broad reach of section 605 as a deterrent against privacy of protected communications.

The Second Circuit concluded that "in light of this legislative history and the uniform pre-1984 judicial interpretation of 47 U.S.C. § 605 as applicable to the distribution of descramblers for the interception of cable television, we conclude that § 605 continues to apply to such distribution."[18]

Plaintiff remarks that in *United States v. Norris,*[19] the Seventh Circuit held that § 605(a) regulates only the unlawful interception of transmissions from the air and § 553(a) regulates the unlawful interception of cable programming transmitted over a cable system.  Plaintiff further notes that in *TKR Cable Company v. Cable City Crop., et al,*[20] the Third Circuit concluded that:

> § 605 encompasses the interception of satellite transmissions 'to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system,' and no more. Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605.

In reaching its decision, the Third Circuit relied heavily upon its interpretation of the statutory

---

[18]  *Id.* at 133.

[19]  88 F.3d 462, 465 (7th Cir. 1996).

[20]  267 F.3d 196 (3rd Cir. 2001).

history of § 605, explaining that although § 605 and its predecessors originally applied to wire communications, Congress narrowed the reach of the § 605 to primarily radio communications when it passed the 1968 amendments to the Communications Act.

The Fifth Circuit has recognized and discussed this split of authority, but has yet to address the issue.[21]  In *Joe Hand Promotions, Inc. v. Garcia*,[22] after noting that the Fifth Circuit had not addressed the applicability of § 605, the District Court Judge decided to follow the line of authority consistent with *Sykes* because the motion before the court was for a default judgment and the Defendant had failed to provide arguments to the contrary.  Due to the fact that Defendants have failed to answer and/or respond to the instant motion for default judgment, the undersigned also feels constrained without arguments to the contrary.  Therefore, this Court will also proceed with its damages analysis under § 605 following the *Sykes* opinion.

In the instant case, Plaintiff submits that the fight originated via a satellite uplink and was subsequently retransmitted to cable systems and satellite companies via satellite signal. Plaintiff admits that because it has not had the benefit of discovery, it is unable to determine the exact method by which Defendants pirated the signal.  Plaintiff has submitted the affidavit of the auditor who visited the establishment which states that he visibly saw and photographed a satellite dish located at the establishment.  What is clear to the Court is that Defendants unlawfully exhibited the fight without lawfully purchasing the Program.  Defendants failed to purchase the licensing fee, but willfully chose to broadcast the fight to its approximately 58 patrons at his commercial establishment

---

[21]  *Garden City Boxing Club, Inc. v. Patricia Vinson, et al*, 2003 U.S. Dist. LEXIS 26180 (N.D. Tex. 2003) citing *Prostar v. Massachi*, 239 F.3d 669, 673-74 (5th Cir. 2001).

[22]  546 F.Supp.2d 383 (2008).

and charged a $1 admission fee at the door.

Plaintiff has submitted evidence that had Defendants lawfully purchased the fight to exhibit at his commercial establishment, he would have paid a fee of $2,200.00 based upon an occupancy of 0-100.[23]   Plaintiff requests that this Court follow the decision in *Joe Hand Promotions, Inc. v. Rodriguez, et al,*[24] where in a similar case, Judge Rosenthal awarded $10,000.00 in statutory damages and an additional $50,000.00 in enhanced damages.

Plaintiff seeks the maximum amount of statutory damages, $10,000.00, under 605(e)(3)(C)(i)(II) and enhanced damages pursuant 605(e)(3)(C)(ii) of up to $100,000.00 plus fees and costs in the amount of $1,592.00.  Statutory damages should not be awarded by default judgment unless the court has a hearing or is provided with detailed affidavits establishing necessary facts.[25]  The court is afforded wide discretion in determining the amount of statutory damages.[26]  Factors that may be considered by the court include the attitude and conduct of the parties, the deterrent value of the award, the expenses saved and the profits earned by the defendant, the revenues lost by the plaintiff and the value of the plaintiff's rights.[27]  Because Defendants have not answered the lawsuit, Plaintiff has not had the benefit of discovering the expenses saved and the profits earned. However, Plaintiff has submitted evidence of the revenues it lost ($2,200.00) as a result of Defendant

---

[23]  Plaintiff's exhibit A.

[24]  Civil Action-07-1542 (S.D. Tx. 2007).

[25]  *United Artists Corp. v. Freeman,* 605 F.2d 854 (5th Cir. 1979).

[26]  *Broadcast Music, Inc. v. Xanthas, Inc.,* 855 F.2d 233 (5th Cir. 1988).

[27]  *Fitzgerald Publishing Co. v. Baylor Publishing Co., Inc.,* 807 F.2d 1110 (2d Cir. 1986).

not paying to broadcast the fight. Plaintiff further maintains that had it received those revenues in December 2006, that money would have gained interest from that time until the present. Plaintiff has also submitted an affidavit of costs and fees that sufficiently details the total litigation expenses. Accordingly, the Court will award Plaintiff $10,000.00 in statutory damages, $50,000.00 in enhanced damages as a deterrent against further unlawful conduct, and the costs and attorneys fees in the amount of $1,592.00.

## CONCLUSION

For the reasons set forth above, the motion for default judgment will be granted in favor of Plaintiff and against Defendants in the total amount of $61,592.00.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 26th day of March, 2010.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE